

RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
7/28/15
yt

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **TIMOTHY MCDOWELL** | **CIVIL ACTION NO. 14-569** |
| **VERSUS** | **JUDGE TRIMBLE** |
| **C&D PRODUCTION SPECIALISTS CO., INC., ET AL.** | **MAGISTRATE JUDGE KIRK** |

### MEMORANDUM RULING

Before the court are two (2) motions for summary judgment filed by Defendants Black Hawk Oilfield Services, LLC ("Black Hawk") and Apache Corporation ("Apache") seeking dismissal of all claims by Plaintiff Timothy McDowell against them in the above-captioned suit.[1] For the reasons expressed herein below, the court finds that Black Hawk's motion for summary judgment should be **GRANTED**, dismissing all claims against it with prejudice and similarly finds that Apache's motion for summary judgment should be **GRANTED**, dismissing all claims against it with prejudice.

I.     BACKGROUND

*Relevant Facts*

This suit arises out of an incident that occurred on March 18, 2013 on the West Delta 105 E Platform, an oilfield production platform positioned on the Outer Continental Shelf adjacent to Louisiana.   Apache, the owner of the platform, hired three (3) independent contractors to provide staffing and conduct operations on the platform: Wood Group PSN, Inc. ("Wood Group"), Black Hawk, and C & D Production Specialists Co., Inc. ("C & D").

---

[1] Motion for Summary Judgment by Black Hawk at R. 62; Motion for Summary Judgment by Apache at R. 66.

Dan Istre, an Apache employee, was the Lead Operator on the platform.  Jared Tierney, a Wood Group employee, recalls that he and Istre would confer about tasks and then divvy up the work to be done amongst themselves.[2]  Tierney operated the crane on the day of the incident at issue in this case.[3]  Tierney selected as his crew for this job, Glenn Rivet, another Wood Group employee; Matthew Fanguy, a Black Hawk employee; and Plaintiff, a C & D employee.[4]

The incident occurred during what is referred to as a "blind lift" wherein the crane operator is unable to see the deck of the platform onto which he is unloading equipment with the crane and relies upon the "signal man" or "flag man" to instruct him during the lift.[5]  On the date in question, Tierney assigned Glenn Rivet the task of signal man and assigned Matthew Fanguy and Plaintiff the task of "load assistants" or "riggers[.]"[6]

The offload operation began sometime after 7:30 A.M. on the date in question.[7]  The lift of the first welding machine was completed without incident.  Tierney, operating the crane, lifted the second welding machine from the supply boat onto the platform and lowered the load until it was approximately twelve (12) feet above the deck of the platform.[8]  Plaintiff and Fanguy held "taglines" attached to the welding machine.[9]  Plaintiff asserts that, as he was holding these taglines, he noticed that the load was twisting and was "about to hang up on the other [welding] machine[,]" so he signaled Glenn Rivet to stop the crane so he could approach

---

[2] Deposition of Tierney [R. 64-6] at 16-19.
[3] Id. at 15:23-24.
[4] Id. at 16:7-11; Memorandum in support of Motion [R. 64-1] at p. 2.
[5] R. 1 at ¶ 9.
[6] R. 64-6 at 15:23 – 16:10.
[7] Email from Dan Istre dated 3/28/2013 [R. 66-2 at p. 39].
[8] Id.
[9] Deposition of McDowell [R. 62-4] at 69:7 – 10.

the load and straighten it out.[10] Plaintiff then repositioned himself beneath the load in order to disentangle the two welding machines and, while he was so positioned, he asserts that the crane began lowering the load onto the platform, striking him in the back of the head and neck.[11] Plaintiff asserts that he was severely injured.[12]

Plaintiff's suit alleges negligence by Apache, Black Hawk, C & D, Wood Group, Shamrock Marine, LLC, Shamrock Energy Solutions, LLC and Shamrock Management, LLC.[13] Plaintiff seeks damages for past and future pain and suffering, mental anguish, loss of enjoyment of life, loss of income, loss of earning capacity, medical expenses and permanent disfigurement.[14]

### Applicable Standard

Fed. R. Civ. P. 56(a) provides that summary judgment shall be granted when the movant shows the absence of any genuine dispute as to any material fact and, for that reason, shows that he is entitled to judgment as a matter of law. The movant must demonstrate the absence of any genuine dispute as to any material fact by citing to particular parts of materials in the record, including depositions, documents and affidavits.[15] The movant may demonstrate entitlement to judgment as a matter of law by pointing out the nonmoving party's inability to produce evidence which, when taken as true for the purposes of the motion, would provide a

---

[10] Id.

[11] Deposition of McDowell [R. 66-2] at 75-76; R. 1 at ¶ 10.

[12] R. 1 at ¶ 10.

[13] Shamrock Marine, LLC, Shamrock Energy Solutions, LLC and Shamrock Management, LLC are alleged to be the servicers of the crane used in the offloading procedure.

[14] R. 1 at ¶ 13.

[15] Fed. R. Civ. P. 56(c)(1)(A).

legally sufficient basis upon which a reasonable jury might base a judgment in the nonmoving party's favor.[16]

Once a motion for summary judgment is made and properly supported, the burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claims.[17]  In so doing, the nonmoving party establishes the existence of a genuine issue of material fact for trial.  The nonmoving party must show that the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor.[18]  A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof.[19]

If the nonmoving party meets his burden of proof, summary judgment is inappropriate and the claims must be preserved for further proceedings.  If, on the other hand, the nonmoving party does not meet his burden, the court must grant summary judgment in recognition of the implausibility of the claims at issue.[20]

All evidence submitted to the court in support of or in opposition to a motion for summary judgment must be of the sort which would be admissible at the trial of the matter.[21] "Metaphysical doubt" as to the existence of a genuine issue for trial is insufficient, as are

---

[16] Celotex Corp v. Catrett, 477 U.S. 317, 2553 – 54 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995); Shotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992), cert. denied 506 U.S. 832 (1992).
[17] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994).
[18] Celotex, 477 U.S. at 325.
[19] Id.
[20] Id. at 322.
[21] Fed. R. Civ. P. 56(c)(2); Salas v. Carptener, 980 F.2d 299, 305 (5th Cir. 1992) quoting Broadway v. City of Montgomery, 530 F.2d 657, 661 (5th Cir. 1976).

"unsubstantiated assertions" and "conclusory allegations[.]"[22]   The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[23]

## II.     ANALYSIS

### Apache's Motion for Summary Judgment

<u>Applicable Law</u>

Apache asserts that the Outer Continental Shelf Lands Act (43 U.S.C. § 1331) ("OCSLA") governs this case since the incident occurred on an oilfield platform permanently affixed to the Outer Continental Shelf ("OCS") off the coast of Louisiana.[24]   Plaintiff does not dispute the applicability of OCSLA in its opposition to the motion.

The OCSLA applies to all of the following locations:

(1)     the subsoil and seabed of the OCS;

(2)     any artificial island, installation, or other device if
    (a)     it is permanently or temporarily attached to the seabed of the OCS, and
    (b)     it has been erected on the seabed of the OCS, and
    (c)     its presence on the OCS is to explore for, develop, or produce resources from the OCS;

(3)     any artificial island, installation, or other device if
    (a)     it is permanently or temporarily attached to the seabed of the OCS, and
    (b)     it is not a ship or vessel, and
    (c)     its presence on the OCS is to transport resources from the OCS.[25]

---

[22] <u>Little</u>, 37 F.3d at 1075, citing <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986), <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 871-73 (1986); <u>Hopper v. Frank</u>, 16 F.3d 92 (5th Cir. 1994).
[23] <u>Lujan</u>, 497 U.S. at 888.
[24] R. 64-1 at p. 6.
[25] <u>Demette v. Falcon Drilling Co., Inc.</u>, 280 F.3d 492, 497 (5th Cir. 2002), overruled on other grounds, <u>Grand Isle Shipyard, Inc. v. Seacor Marine, LLC</u>, 589 F.3d 778 (5th Cir. 2009).

The Apache platform at issue in this case meets the situs requirement for OCSLA applicability, as it is permanently attached to the OCS, has been erected on the OCS and is used for the production of resources from the OCS.  Once the situs requirement is met, the OCSLA incorporates the civil and criminal law of the adjacent State as if they were federal law, as long as:

> (1) the controversy arises on an OCSLA situs;
> (2) Federal maritime law must not apply of its own force; and
> (3) the State law must not be inconsistent with Federal law.[26]

Apache cites numerous Fifth Circuit and Western District Court cases which it asserts show that in cases such as the one at bar where an individual working on an oilfield production platform located on the OCS in the Gulf of Mexico sues the platform owner for an injury which occurred on that platform, Louisiana law applies under the test above.[27]  The court agrees that, given the facts of this case, Louisiana law applies as a surrogate federal law via the OCSLA.[28]

Direct Negligence by Apache

Apache's motion asserts that there is no evidence in the record of this case which would support a finding of direct negligence by Apache as to the incident forming the basis of Plaintiff's claims.  Specifically, Apache asserts that: (1) Apache's safety manual, which was reviewed by Plaintiff prior to the incident, expressly advises individuals not to place themselves beneath loads being moved by a crane; (2) a Job Safety Analysis was conducted prior to the start of the offloading operation; and (3) Dan Istre, Apache's employee, was in his office at the

---

[26] Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352 (1969);  Id. at 498, citing Union Texas Petroleum Corp v. PLT Engineering, 895 F.2d 1043 (5th Cir. 1990).
[27] R. 64-1 at p. 7.
[28] Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 589 F.3d 778, 784 (5th Cir. 2009).

time of Plaintiff's alleged injury and not involved in the offloading operation, having delegated the operation to an independent contractor.[29]

Plaintiff opposes Apache's motion, asserting the existence of a genuine issue of material fact regarding Apache's negligence with respect to the crane used during the blind lift. Specifically, Plaintiff alleges that the crane used in the lift should have been "tagged out of service" and malfunctioned on the day of the incident at issue in this case.  Plaintiff points to an email he received from C & D stating that the crane should have been "tagged out of service" and to a work order generated by Sparrows Offshore, LLC ("Sparrows"), the contractor hired to repair the crane, listing the start time for repairs as "0600[.]"[30]  Plaintiff asserts that, given the lack of evidence in the record as to the exact time when the crane malfunctioned and whether or not the crane should have been out of use due to repairs, summary judgment is inappropriate as to Plaintiff's claims of direct negligence by Apache under Louisiana law.

The court disagrees.  We have carefully read the testimony offered by the parties and Plaintiff can point to no evidence which would support the assertion that the crane malfunctioned during the lift, causing his injury.  In fact, the testimony of Jared Tierney, the crane operator, disproves any such allegation.

> Q:   But, just to be clear, you have absolutely no
> recollection of experiencing any problems with the
> crane before [Plaintiff's] injury?
> A:   On that day, no.[31]

Similarly, the testimony of Plaintiff and the designated signal man, Glenn Rivet, shows that the accident at issue was caused by a breakdown in communications between Plaintiff and

---

[29] R. 64-1 at pp. 8-9.
[30] R. 66 at pp 9-10.
[31] Deposition of Tierney [R. 70-1 at Exhibit K] at 46:2-5.

Rivet.  Plaintiff testified that he stepped away from the load, made eye contact and gave Rivet the signal to stop the lift, instructing him in a loud voice, 'Let's hold up 'till we get straight.'[32]  In contrast, Rivet testified that at no time prior to the accident was he given a signal to "hold up or stop."[33]  Absent from the record is any evidence that the accident at issue was the result of a malfunction by the crane.  To the contrary, Tierney testified that the crane had no "problems" in conjunction with the accident.[34]  Vaughn Luquette, Sr., the mechanic who repaired the crane and wrote the work order, testified that the crane malfunction occurred after Plaintiff's injury and that his notation of the start time of repairs as "0600" to "1800" hours was due solely to the policy of his employer, Sparrows, requiring a twelve (12) hour minimum hourly charge for offshore repairs.   Luquette, while being informed of the malfunction of the crane, was instructed that the malfunction occurred after Plaintiff's injury, once Plaintiff had been attended to and the lift operation resumed later in the day.[35]

In summary, even if the court were left without the unrefuted evidence which places the malfunction after Plaintiff's injury, there is no evidence in the record to support the allegation that a crane malfunction was the cause of Plaintiff's injury, since the crane operator himself does not report any such malfunction and testimony by others reveals a miscommunication between Plaintiff and Rivet is the cause-in-fact of the accident.   Louisiana negligence law requires proof of causation, among the five (5) elements of the duty-risk analysis.[36]  The record in this case contains no evidence that a crane malfunction caused or

---

[32] R. 66-2 at 76:11-13.
[33] Deposition of Rivet [R. 22-6] at 31:21-24.
[34] R. 70-1 at 46:2-5.
[35] Deposition of Luquette [R. 70-1 at Exhibit L] at 23:20 – 24:9; 27:23 - 28:3.
[36] La. Civ. C. Art. 2315; Richthofen v. Medina, 164 So. 3d 231 (5th Cir. 2014); Bufkin v. Felipe's Louisiana, LLC, 2014-0288 (La. 10/15/2014), 2014 WL 5394087; Maw Enterprises, LLC v. City of Marksville, 149 So.3d 210 (La. 2014).

even contributed to Plaintiff's alleged injury.  We find, therefore, that the issue of the crane malfunction is not a genuine issue of material fact in this case.

<u>Vicarious Liability</u>

Under Louisiana law, a principal may not be held liable for injuries caused by the negligent acts of its independent contractor except when: (1) the liability arises from the contractor's performance of ultrahazardous activities on behalf of the principal; or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts.[37]  Neither party disputes that Wood Group, C & D and Black Hawk were independent contractors.

Plaintiff asserts that Apache expressly or impliedly authorized unsafe acts by its contractors.  Plaintiff points out that the Job Safety Analysis ("JSA") completed prior to the start of the lift and signed by all independent contractor employees and Istre, required that operations cease if communication between the workers were disrupted during the operation. Plaintiff asserts that Apache authorized the lift to proceed without ensuring ample communication by failing to ensure that all employees participating in the lift were equipped with radios.

Apache argues that Istre delegated authority over the manner in which the blind lift was carried out to Jared Tierney, an employee of independent contractor Wood Group and did not supervise the operation, as evidenced by the fact that Istre remained in his office during the lift operation.

---

[37] <u>Coulter v. Texaco, Inc.</u>, 117 F.3d 909 (5th Cir. 1997) citing <u>Graham v. Amoco Oil Co.</u>, 21 F.3d 643 (5th Cir. 1994).

"Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way."[38]  The facts before the Court demonstrate that Apache did not exercise control over the step-by-step process of the blind lift performed by its independent contractors.  The JSA drafted prior to the lift sets out general safety protocols, but does not dictate the precise manner in which the lift would be performed.  Moreover, Tierney testified that he was placed in charge of this operation and operational decisions such as who would crew the lift were left to his discretion.[39]  We also note that the JSA does not prescribe the manner in which good communications are to be maintained among workers, but clearly does anticipate the use of hand signals, instructing that the "crane operator will take hand signals from a designated individual only."[40]

Based on the evidence before the court, we find that Apache may not be held vicariously liable for any tortious acts committed by its independent contractors in this case.  Plaintiff fails to establish the applicability of either exception to the bar on vicarious liability of principals on behalf of their independent contractors.

We note that Plaintiff asserts that Apache's failure to properly complete the Loss Occurrence Report and the discrepancies among various subsequent accounts of the accident give rise to a material fact issue regarding liability.  The court does not agree.  Even if the court were to assume that these reports each gave differing versions of the exact manner in which the accident at issue occurred, such assumption would not change Apache's liability in this

---

[38] Fruge ex rel Fruge v. Parker Drilling Co., 337 F.3d 558 (5th Cir. 2003) citing LeJeune v. Shell Oil Co., 950 F.2d 267-270 (5th Cir. 1992).
[39] Deposition of Tierney [R. 64-6] at 16:3 – 18:5.
[40] JSA [R. 66-2] at p. 2.

matter, as it had clearly designated operational control of the blind lift to its independent contractors.

<u>Black Hawk's Motion</u>

Black Hawk's motion seeks a judgment dismissing all claims against it by Plaintiff on the basis that there is no allegation of wrongdoing by its employee, Matthew Fanguy.[41]  Plaintiff does not oppose this motion and the court's review of the evidence confirms that no party alleges any breach of duty by Fanguy.  Accordingly, no genuine issue of material fact is presented which would prohibit summary judgment dismissing all claims against Black Hawk in this case.

## III.   CONCLUSION

Based upon the law and argument submitted by the parties, as well as our review of the evidence before us, it is the finding of the court that Plaintiff fails to demonstrate the existence of any genuine issue of material fact which would prohibit summary judgment in favor of Apache.   Apache shows that there is no evidence of direct negligence or facts supporting liability under the theory of vicarious liability.  Accordingly, Apache's motion should be granted in full.

Similarly, the court finds that Black Hawk's unopposed motion for summary judgment should be granted in full, based upon our finding that no allegation of wrongdoing by Black Hawk's employee has been made in this suit.

---

[41] R. 62.

The court finds that its grant of summary judgment in favor of both Apache and Black Hawk should be designated as a final judgment for appellate purposes according to Fed. R. Civ. P. 54(b).  The court finds no just reason for any delay of appeal as to these rulings.

The court will issue a judgment in accordance with these findings.

Alexandria, Louisiana
July 28, 2015

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE